IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE SCHOOL DISTRICT OF PHILADELPHIA | : : | CIVIL ACTION |
|     Plaintiff, | : : | |
| v. | : : | |
| KIMBERLY WILLIAMS, Individually and on behalf of C.H., | : : | No. 14-6238 |
|     Defendant. | : | |

**MEMORANDUM**

**Schiller, J.**                                                                                                                                        **November 20, 2015**

The School District of Philadelphia (the "School District" or "District") seeks judicial review of an August 3, 2014 decision by Special Education Hearing Officer Linda Valentini (the "Hearing Officer"). Kimberly Williams is the parent and guardian of C.H., a disabled student who attends public school in Philadelphia. Williams filed a due process complaint against the School District in December 2013 alleging procedural and substantive violations of the Individuals with Disabilities Education Act ("IDEA"). After a lengthy hearing, the Hearing Officer found that the School District had denied C.H. a free appropriate public education ("FAPE") during the 2013–2014 school year and ordered several remedies. The School District challenged that determination, as well as the scope of the remedies, and both parties now move for Judgment on the Administrative Record. The Court affirms the Hearing Officer's findings of denial of FAPE and orders compensatory education and other injunctive relief.

## I.     BACKGROUND

C.H. is a student who suffers from autism and a speech and language impairment, and who is therefore eligible for special education. (Hearing Officer's Findings of Fact [HO FF] ¶ 1.) During the 2013–2014 school year, C.H. was a ninth grader at Roxborough High School. (S-45 [Mar. 2014 IEP] at 2.) He participated in a reading program at a second grade level and a math program at a second grade to third grade level. (*Id.* at 9.)

### A.     Procedural History

Prior to beginning high school in the fall of 2013, C.H. attended middle school at Feltonville School of Arts and Sciences. (S-1 [Apr. 2013 IEP] at 1.) Williams filed a due process complaint challenging C.H.'s education during the 2012–2013 school year in June 2013. (P-5 [HO McElligott Decision] at 3.) Hearing Officer Jake McElligott issued a decision on November 11, 2013, in which he determined that the School District had denied FAPE to C.H. by providing an inadequate speech and language program, failing to individualize Extended School Year programming, failing to implement certain Individualized Education Plan ("IEP") goals, and committing various procedural flaws in the IEP process. (*Id.* at 12–14.)

Meanwhile, the School District issued a Notice of Recommended Education Placement ("NOREP") proposing that C.H. attend high school at Roxborough, as Williams had requested. (HO FF ¶ 3; HO McElligott Decision at 6.) Williams agreed with the placement but disagreed with certain aspects of the educational program outlined in the existing IEP from April 2013. (HO FF ¶ 4.) On September 4, 2013, C.H.'s new IEP team, including Williams, held an IEP meeting to revise the IEP as necessary for C.H.'s transition to high school. (HO FF ¶ 5.) At this meeting, the team discussed transferring the iPad C.H. had used at Feltonville to Roxborough and Williams's desire for C.H. to have a 1:1 aide to help him transition to high school and allow

him to attend regular-education art and physical education classes, among other topics. (HO FF ¶ 6; Tr. at 522–23, 529–30, 1247–48.) Representatives of the School District agreed to facilitate the transfer of the iPad, and issued a NOREP the following day indicating that they would provide a 1:1 aide and make further revisions to the IEP. (Tr. at 522–23, S-9 [Sept. 2013 NOREP].)

The team held another IEP meeting on November 18, 2013, to review test results and update the current educational levels in the IEP. (HH FF ¶ 7.) After that meeting, Williams did not receive a copy of the revised IEP, so she filed a due process complaint on December 18, 2013. (HO FF ¶ 8.) The parties held a Resolution Meeting in January 2014, after which the School District provided Williams with a copy of the IEP that had been revised after the November 2013 meeting. (HO FF ¶ 8; *see* S-24 [Nov. 2013 IEP].) The parties participated in several additional IEP meetings, and the School District issued a final IEP on March 21, 2014. (HO FF ¶¶ 10–12.) Williams declined to sign a Permission to Reevaluate C.H. pursuant to the School District's usual triennial reevaluation. (HO FF ¶ 11 & n.5.)

On March 28, 2014, Williams filed an amended due process complaint. (HO FF ¶ 13; Am. Due Process Compl.) The Hearing Officer held a hearing on the complaint over the course of five days in May and June 2014. (HO Valentini Decision [HO Decision] at 1.) She issued her decision on August 3, 2014. The School District filed the Complaint in this case on October 31, 2014, seeking judicial review of the Hearing Officer's decision. (Compl. ¶ 1.)

### B.     The Hearing Officer's Decision

The Hearing Officer's decision addresses the following issues raised by the parties in this matter: (1) whether the School District engaged in practices that impeded Williams's opportunity to participate in the decisionmaking process regarding C.H.'s education; (2) whether the District

3

failed to provide C.H. with FAPE by failing to provide an iPad as specified in his IEP, failing to provide a 1:1 aide who would allow him to participate in regular education classes, failing to provide appropriate speech/language services, using inappropriate present educational levels, failing to provide meaningful transition planning, failing to individualize Extended School Year programming, and failing to address bullying; (3) whether the District discriminated against C.H. in violation of Section 504 of the Rehabilitation Act; and (4) whether the District should conduct a comprehensive evaluation of C.H. (HO Decision at 2–3.) The Hearing Officer found that the District's failure to provide the iPad, failure to provide the 1:1 aide, and failure to provide appropriate speech and language services constituted denials of FAPE, while the other alleged failures did not. (HO Decision at 15–22.) She found that the District had not committed any procedural violations, and that Williams's Section 504 claims were coextensive with her IDEA claims. (*Id.* at 23.) Finally, she found that the School District should conduct a triennial evaluation of C.H., even without Williams's permission. (*Id.* at 23, 26.) Williams does not challenge the Hearing Officer's findings in favor of the School District, so this Court need only address those issues on which the Hearing Officer found in Williams's favor.

        *1.     Failure to provide the iPad*

The Hearing Officer found that Roxborough High School staff was aware no later than September 4, 2013 that C.H. had used an iPad in 8th grade, and that they agreed at that time to transfer the iPad to the high school. (HO FF ¶¶ 15–17.) C.H.'s IEPs have consistently indicated that he requires or benefits from an iPad or other assistive technology to help develop his writing and communication skills. (*Id.* ¶ 26; *see e.g.* Apr. 2013 IEP at 8; Mar. 2014 IEP at 11.) Due to licensing and other technical difficulties, C.H. did not receive the iPad until March 2014. (HO FF ¶¶ 18, 22.) The iPad that was provided did not contain the 500-word vocabulary bank that C.H.

4

had developed in 8th grade, and the staff members working with C.H. in high school testified that they did not know how to use the iPad as assistive technology. (HO FF ¶¶ 23–27.)

The Hearing Officer determined that two weeks was a reasonable time period to enact the transfer of the iPad, so the failure to deliver the device to C.H. between September 15, 2013 and March 15, 2014 constituted a denial of FAPE. (HO Decision at 17.) In order to remedy this denial and address the staff's lack of training on how best to use the iPad, she ordered the School District to contract with an expert who could provide such training to C.H., Williams, C.H.'s teachers, and his 1:1 aide at the beginning of each school year. (*Id.* at 18.) The Hearing Officer specified that the training should not exceed 120 hours, based on her determination of the number of hours for which C.H. had been denied FAPE, and that the cost of educational applications acquired should not exceed $1,000. (*Id.*)

        2.      *Failure to provide the 1:1 aide*

The School District agreed on September 4, 2013 to provide C.H. with a 1:1 aide, and issued a NOREP on September 5, 2013 confirming that assignment. (HO FF ¶¶ 28, 30; Sept. 2013 NOREP.) However, because of union rules for District paraprofessionals, the School District did not provide the aide until January 2, 2014. (HO FF ¶¶ 31, 37.) During the fall 2013 semester, a bus attendant worked with C.H. during school three days a week, but the School District could not confirm that the bus attendant had the required qualifications to serve as an instructional paraprofessional. (HO FF ¶¶ 34–35.) During that semester, C.H. did not attend the regular education classes provided for in his IEP. (HO FF ¶¶ 29, 33.) Once the aide was provided in January 2014, regular art and physical education classes were added to C.H.'s schedule. (HO FF ¶ 38.)

The Hearing Officer found that the School District's failure to provide a 1:1 aide between September 5, 2013 and January 2, 2014 constituted a denial of FAPE and a violation of C.H.'s right to be educated in the least restrictive environment possible. (HO Decision at 18.) She determined that one month was a reasonable amount of time for the District to find an aide, and ordered compensatory education in the form of reimbursement for evening, weekend, or summer art and physical education programs not to exceed the salary of the 1:1 aide for three months. (HO Decision at 19.)

### 3. Failure to provide appropriate speech and language services

The Hearing Officer described C.H.'s speech/language program as including both "concentrated" and "distributed practice" models. (HO FF ¶ 40.) The concentrated model included sixty minutes per month of direct speech and language therapy in a small group. (HO FF ¶ 41; Mar. 2014 IEP at 40.) The distributed practice model used opportunities that arose throughout the day for C.H. to work on his communication skills, and it involved both C.H.'s teachers and his 1:1 aide. (HO FF ¶¶ 43–44.) However, the Hearing Officer found that the forty minutes per month of "indirect services time" earmarked for training of staff working with C.H. by a speech and language therapist was insufficient for the therapist to collect and analyze the data necessary to monitor the progress of the distributed practice approach. (HO FF ¶¶ 44–46.) She also found that fifteen minutes per week was an insufficient amount of direct therapy. (HO FF ¶ 52.)

Giving substantial weight to the testimony of a private speech/language therapist who testified on Williams's behalf, the Hearing Officer found that the School District's program was insufficient to address C.H.'s needs and thus constituted a denial of FAPE. (HO Decision at 19–20.) She accepted the expert's recommendation that C.H. requires three forty-five-minute

speech/language therapy sessions per week, and therefore ordered the School District to fund private therapy for two and a quarter hours per week for as many weeks as school was in session in 2013 – 2014. (*Id.* at 20.) She declined to credit the fifteen minutes of therapy that C.H. had received each week because the therapist at Roxborough did not consult with C.H.'s previous therapist or reevaluate C.H. prior to designing the program. (*Id.*) She also ordered the School District to fund one and a quarter hour each month for 10 months of consultation with Williams and/or staff in C.H.'s community programs. (*Id.*)

### 4. Additional remedies

In addition to the awards of compensatory education described above, the Hearing Officer ordered the School District to provide C.H., as part of his IEPs, with a personal iPad throughout his attendance in high school. (*Id.* at 25.) She also ordered that it continue to provide him with a 1:1 aide unless the IEP team, with particular emphasis on the parent, determines that the aide should be faded or eliminated. (*Id.*) She ordered that the School District should provide, as part of C.H.'s IEPs, three forty-five-minute sessions each week of direct speech/language therapy and seventy-five minutes per month of consultation services by a therapist with the IEP team members, including fifteen minutes with Williams. (*Id.*) Finally, she ordered that the School District provide thirty minutes per week of self-advocacy instruction, and that it conduct a comprehensive evaluation and a vocational assessment of C.H. (*Id.* at 26.)

## II. STANDARD OF REVIEW

The IDEA allows any party to challenge the result of a due process hearing by bringing a civil action in a district court. 20 U.S.C. § 1415(i)(2)(A). The statute instructs that a reviewing court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional

evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." *Id.* § 1415(i)(2)(C). A district court conducts a modified de novo review of the underlying decision, giving "due weight" to the administrative factual findings. *S.H. v. State-Operated Sch. Dist. of City of Newark*, 336 F.3d 260, 270 (3d Cir. 2003). Under this modified de novo review, a court must defer to the hearing officer's factual findings unless it can point to contrary nontestimonial extrinsic evidence on the record. *Id.* "[T]he party challenging the administrative decision bears the burden of persuasion before the district court as to each claim challenged." *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 270 (3d Cir. 2012).

### III.  DISCUSSION

#### A.  Denial of FAPE

The IDEA requires school districts that receive federal funds to provide children with disabilities with FAPE, defined as "special education and related services that (A) have been provided at public expense, under public supervision and direction, and without charge; (B) meet the standards of the State educational agency; (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and are provided in conformity with the individualized education program required under [the statute]." 20 U.S.C. §§ 1401(9), 1412(a)(1). In order to provide a student with FAPE, a school district must provide services sufficient to allow the child to benefit educationally from his instruction and must comply with the student's IEP and the procedural requirements of the IDEA. *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 203–04 (1982). A court determining whether a district has denied a student FAPE engages in a twofold inquiry: (1) whether the

district complied with the procedures set forth in the IDEA; and (2) whether the IEP is "reasonably calculated to enable the child to receive educational benefits." *Id.* at 206–07.

The IEP, which a district must produce for each disabled child, is the primary mechanism for ensuring the provision of FAPE. *Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751, 756 (3d Cir. 1995). An IEP must provide the student with a "basic floor of opportunity," but need not provide for the optimal level of services. *See Rowley*, 458 U.S. at 201; *Carlisle Area Sch. v. Scott P.*, 62 F.3d 520, 532 (3d Cir. 1995). "To prevail on a claim that a school district failed to implement an IEP, a plaintiff must show that the school failed to implement substantial or significant provisions of the IEP, as opposed to a mere *de minimis* failure, such that the disabled child was denied a meaningful educational benefit." *Melissa S. v. Sch. Dist. of Pittsburgh*, 183 F. App'x 184, 187 (3d Cir. 2006). Additionally, the IDEA requires a district to educate a disabled child in the least restrictive environment, meaning alongside non-disabled children, to the extent possible considering the severity of his disability. 20 U.S.C. § 1412(a)(5); *D.F. v. Collingswood Borough Bd. of Educ.*, 694 F.3d 488, 499 (3d Cir. 2012). The Hearing Officer found that the School District denied C.H. FAPE by failing to provide him an iPad, failing to provide a 1:1 aide, and providing insufficient speech/language therapy. (HO Decision at 17–20.) The School District seeks review and reversal of all three conclusions.

  1. *Failure to provide the iPad*

The School District argues, first, that an iPad was not required by C.H.'s IEP, and second, that the record contains insufficient evidence of C.H.'s educational need for the iPad to prove that its absence throughout most of the 2013–2014 school year constituted a denial of FAPE. (Mem. in Supp. of Pl.'s Mot. for J. on Admin. R. at 8, 18.) The April 2013 IEP, which was operative during the school year at issue, states that "[s]ubstantial modifications of the

general education curriculum are also needed such as an iPad or other portable computerized device that allows [C.H.] to express his ideas," and refers to the use of an iPad or other device throughout. (Apr. 2013 IEP at 8, 15, 25, 27, 29, 35; Tr. at 88.) The November 2013 IEP also references the iPad. (Nov. 2013 IEP at 9.) C.H.'s teacher changed this language in the March 2014 IEP to state that the iPad was beneficial rather than needed, but did so outside of the IEP process. (HO FF ¶ 24; Tr. at 1018; Mar. 2014 IEP at 11.)

C.H.'s teacher in Roxborough's autistic support classroom lent him her personal tablet, a Kindle Fire, during the period between September 2013 and March 2014. (HO FF ¶ 20.) However, the Hearing Officer determined that the District nevertheless failed to comply with the IEP. (HO Decision at 17.) Regardless of whether or not a Kindle is a satisfactory substitute for the iPad, there is no evidence in the record that the Kindle was used for the specific purposes designated in the IEP, including demonstrating synthesis of vocabulary and using apps to learn to tell time. (Apr. 2013 IEP at 28, 31.) Therefore, the School District does not meet its burden to show that it carried out the Specially Designed Instruction involving assistive technology that is specified in the IEP. (*See id.*); *Ridley*, 680 F.3d at 270.

Since the School District failed to implement the IEP, the Court must determine whether this failure was substantial or significant, rather than *de minimis*. *Melissa S.*, 183 F. App'x at 187. The School District argues that its failure to provide the iPad did not deprive C.H. of any meaningful educational benefit, because C.H. was verbal and therefore did not need the iPad in order to communicate. (Mem. in Supp. of Pl.'s Mot. for J. on Admin. R. at 18.); *see Melissa S.*, 183 F. App'x at 187. However, the fact that C.H. could speak without the iPad did not mean that its role in his IEP was not substantial or significant. *See Van Duyn v. Baker Sch. Dist.*, 502 F.3d 811, 822 (9th Cir. 2007) (clarifying that a child need not have suffered demonstrable educational

harm to prevail on a claim for failure to implement an IEP). The iPad is mentioned seven times in the April 2013 IEP, indicating that the IEP team believed it was an important tool for C.H. to improve critical communication and life skills. Moreover, this emphasis is consistent with the testimony of Williams's expert, Marie Marks, who described the role that augmentative and alternative communication technology can play for a student like C.H., who struggles to spontaneously construct grammatically correct sentences. (Tr. at 659–71.) It also reflects C.H.'s use of the iPad in 8th grade to develop a vocabulary word bank with pictures, and his reliance on technology at home to communicate when he struggles to find the words he needs. (Tr. at 1240–46.) Therefore, the evidence in the record supports the Hearing Officer's conclusion that the School District's failure to provide the iPad was significant enough to deny C.H. a meaningful educational benefit. *Melissa S.*, 183 F. App'x at 187. Recognizing, as the Hearing Officer did, the District's good faith efforts to transfer the device in a timely manner, the Court affirms her determination that the failure to provide the iPad constituted a denial of FAPE. (*See* HO Decision at 17.)

    2.  *Failure to provide 1:1 aide*

  The School District's inability to provide C.H. with a 1:1 aide until January 2014 indisputably constitutes a failure to implement the IEP. (HO FF ¶¶ 30–37.) Given the integral role the aide subsequently played in C.H.'s current educational program, this failure is substantial. (*See* Tr. at 1164–68, 1189–1208 (testimony of the 1:1 aide about her interactions with C.H. throughout the school day).) The School District also concedes that the delay in providing the aide prevented C.H. from attending regular education art classes during the fall 2013 semester. (HO FF ¶ 33; Mem. in Supp. of Pl.'s Mot. for J. on Admin. R. at 20.) Therefore, C.H. was not educated in the least restrictive environment appropriate to his needs, as required

by the IDEA. *See Carlisle Area Sch.*, 62 F.3d at 532. The School District's inability to give him access to regular education art classes was particularly significant given his expressed interest in art. (*See, e.g.*, Tr. at 1240.) Therefore, while the union work rules posed an understandable difficulty, the denial of the 1:1 aide nevertheless constituted a denial of FAPE. (*See* HO FF ¶ 31.)

### 3. Failure to provide appropriate speech and language services

The Hearing Officer found that the speech/language therapy that the School District provided C.H. pursuant to his IEP was insufficient because the IEP team did not make "an individualized determination of the type/frequency/amount of speech/language services" and failed to implement the distributed practice model effectively. (HO Decision at 19–20.) Whether the IEP is appropriate is a question of fact, and therefore the hearing officer's decision should be considered prima facie correct. *P.P. ex rel. Michael P. West Chester Area Sch. Dist.*, 585 F.3d 727, 734–35 (3d Cir. 2009). The School District has not identified sufficient evidence in the record to support reversal. It notes that a distributed practice model is "the District's preferred approach for students with autism," because it allows students' communication needs to be addressed throughout the day by multiple staff members. (Mem. in Supp. of Pl.'s Mot. for J. on Admin. R. at 24.) However, Marie Marks, the parent's expert, testified that the program provided to C.H. did not include sufficient data collection and evaluation to constitute a true distributed practice model program. (Tr. at 677–680.) According to Marks, if the speech therapist, Carol Maclean, were to carry out this data evaluation, it would require significantly more time than the IEP specified. (Tr. at 682–83; Mar. 2014 IEP at 40.) Maclean's testimony largely confirms that the distributed practice model was so decentralized that she did not track the opportunities that other staff members provided to C.H. to develop his communication skills or consistently log their results. (Tr. at 368–373.) Additionally, Maclean did not speak to C.H.'s prior speech

therapist or evaluate his needs at the outset of the school year prior to designing his program. (HO FF ¶ 51.)

Outside of the distributed practice program, the IEP provided for sixty minutes per month, or fifteen minutes per week, of direct, small group speech and language therapy. (Mar. 2014 IEP at 40.) The Hearing Officer credited Marks's testimony concluding that C.H. needed three forty-five-minute therapy sessions each week in order to achieve meaningful educational benefits and address his difficulties with vocabulary and syntax. (HO Decision at 20; Tr. at 673.) While Maclean and other Roxborough High School staff certainly worked with C.H. and attempted to improve his communication skills, the preponderance of the evidence supports the Hearing Officer's conclusion that the program outlined in the IEP was not "reasonably calculated to enable the child to receive meaningful educational benefits," and thus denied FAPE to C.H. *Mary T. v. Sch. Dist. of Phila.*, 575 F.3d 235, 240 (3d Cir. 2009).

## B. Remedy

The School District asserts that the Hearing Officer's remedial order exceeded her authority and conflicted with the IDEA. (Mem. in Supp. of Pl.'s Mot. for J. on Admin. R. at 11–16, 22–23.) The statute instructs district courts reviewing IDEA administrative proceedings to "grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii). The Supreme Court has held that this language gives courts broad discretion to craft relief that serves the IDEA's purpose of providing handicapped children with FAPE that is tailored to their unique needs. *Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 369 (1985). A court is tasked with crafting an equitable award that appropriately compensates the student in each individual case. *D.F. v. Collingswood Borough Bd. of Educ.*, 694 F.3d at 498–99.

The primary judicially-created remedy for IDEA violations is compensatory education. *Ferren C. v. Sch. Dist. of Phila.*, 612 F.3d 712, 717 (3d Cir. 2010). "Compensatory education aims to place disabled children in the same position they would have occupied but for the school district's violation of IDEA, by providing the educational services children should have received in the first instance." *G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601, 608 (3d Cir. 2015) (internal quotation marks omitted). Courts award compensatory education for a period equal to the period of denial of FAPE, but excluding the time the school district reasonably required to address the problem. *M.C. v. Cent. Reg'l Sch. Dist.*, 81 F.3d 389, 397 (3d Cir. 1996); *accord G.L.*, 81 F.3d at 397. However, compensatory education is not the only relief available under the IDEA. Rather, a court may order any equitable relief that is appropriate given the purpose of the IDEA, including tuition reimbursement for private school, a prospective injunction, or a declaratory judgment. *Burlington*, 471 U.S. at 369–70 (noting that in some cases, "it seems clear beyond cavil that 'appropriate' relief would include a prospective injunction"); *see also Hesling v. Avon Grove Sch. Dist.*, 428 F. Supp. 2d 262, 273 (E.D. Pa. 2006). This Court need not determine the exact boundaries of the Hearing Officer's authority because it will order its own relief, bearing in mind the Hearing Officer's expertise in this area and familiarity with this case. *See Cocores v. Portsmouth, N.H. Sch. Dist.*, 779 F. Supp. 203, 205 (D.N.H. 1991) (noting that it would make little sense for Congress to have given hearing officers less remedial authority than the court, given their particular expertise).

The School District's primary objection to the remedies in the Hearing Officer's order is that many of them extend beyond the one-year IEP period and dictate the level of services the School District should provide for the remainder of C.H.'s high school education. The District emphasizes that the IDEA provides for annual review of the IEP, and contends that the Hearing

Officer's order impermissibly invades that process. *See* 20 U.S.C. § 1414(d); (Mem. in Supp. of Pl.'s Mot. for J. on Admin. R. at 11–15.). It is true that the statute requires yearly review of the IEP, and that that process is at the IDEA's core. *See Schaffer v. Weast*, 546 U.S. 49, 56 (2005). However, appropriate prospective injunctive relief is clearly available under the IDEA, and where possible is even preferable to backward-looking compensatory relief. *See Burlington*, 471 U.S. at 370. The availability of prospective relief is logical given the Act's purpose of providing disabled students with quality public education and the time-consuming nature of the IDEA's procedural protections. A student has "only one childhood, one education," and therefore it is critical to ensure that school districts appropriately implement the IDEA in a timely manner, so the student may achieve as many educational gains as possible while in public school. *See Vasquez v. Dep't of Educ. of P.R.*, Civ. A. No. 14-1644, 2014 WL 6879390, at *7 (D.P.R. Dec. 4, 2014).

Here, Williams has filed successful due process complaints in two successive years. (McElligott Decision at 12–14; HO Decision at 17–20.) Moreover, nearly two years have elapsed since the filing of the due process complaint at issue in this case. (*See* HO FF ¶ 8.) The School District's suggestion that future disputes may only be re-litigated as they arise ignores the fact that a third due process complaint might not be resolved until after C.H. graduates from high school. (*See* Mem. in Supp. of Pl.'s Mot. for J. on Admin. R. at 15.) The Hearing Officer's attempt to permanently resolve the issues in this case serves both parties' interest in avoiding future litigation. At the same time, the Hearing Officer's order does not seek to replace the IEP process. *Cf. Indep. Sch. Dist. No. 432 v. J.H.*, 8 F. Supp. 2d 1166 (D. Minn. 1998) (holding that an administrative decision was improper where the parent had not given the district an opportunity to formulate or implement an IEP). In the order addressing the provision of a 1:1

aide, the Hearing Officer made clear that the order applied "unless and until the entire IEP team, with particular emphasis on the Parent, believes that the aide can be [faded or eliminated]." (HO Decision at 25.) The Court will add a similar phrase to any order that extends beyond one year, in order to make clear that the IEP process remains the primary mechanism for the provision of C.H.'s education. The specific remedies included in the Hearing Officer's order are discussed in more detail below.

### 1. *Compensatory education*

The Hearing Officer ordered an award of compensatory education for each of the three denials of FAPE that she identified: the denial of the iPad, the denial of the 1:1 aide, and the inadequate speech/language therapy.

#### a. Failure to provide the iPad

To remedy the denial of FAPE resulting from the School District's failure to provide the iPad, the Hearing Officer ordered the School District to provide training for C.H. and his teachers on how to use the iPad for appropriate educational purposes. (HO Decision at 18.) The Hearing Officer in effect applied the Third Circuit's standard articulated in *M.C.*, estimating the period of deprivation to be one hour per day, five days a week during the period that C.H. did not have the iPad, minus a two week allowance for the District to enact the transfer of the device. (*Id.* at 17–18.); *M.C.*, 81 F.3d at 397. Therefore, she capped the compensatory training at 120 hours and $1,000. (HO Decision at 18.) She also sought to put C.H. in the position he would have been in had the iPad been used for the educational purposes specified in the IEP, recognizing that access to the iPad could not provide a meaningful educational benefit without training on how to appropriately use it. (*Id.*) The Hearing Officer's order that the 120 hours be divided over C.H.'s remaining years of high school simply allows the compensatory education to

have a greater impact, and does not interfere with the IEP team's ability to determine which apps the training should focus on or what role it should play in C.H.'s overall education.

The School District argues that the Hearing Officer lacked the authority to order the District to hire an outside consultant or provide training to staff members who work with C.H., because Pennsylvania's Public School Code governs the training of public school staff. (Mem. in Supp. of Pl.'s Mot. for J. on Admin. R. at 22.) However, the District relies on a Pennsylvania Commonwealth Court case that arises under Pennsylvania's gifted education law and applies a test explicitly intended to resolve conflicts between state laws. *Saucon Valley Sch. Dist. v. Robert O.*, 785 A.2d 1069, 1076 & n.14 (Pa. Commw. Ct. 2001). Pennsylvania state law does not limit this Court's remedial authority under the IDEA. Moreover, *Saucon Valley* and a subsequent Commonwealth Court IDEA case on which the School District relies hold that an administrative decisionmaker may not order a district to hire an outside expert who would provide services beyond what the statute requires. *Mifflin Cty. Sch. Dist. v. Special Educ. Due Process Appeals Bd.*, 800 A.2d 1010, 1014 (Pa. Commw. Ct. 2002) ("Further, the Panel had no authority to order the District to engage outside experts after finding that the . . . services were sufficient."); *Saucon Valley*, 785 A.2d at 1078 ("Although the Panel may have the implicit authority to remedy non-compliance with the special education regulations, it does not have the authority to impose requirements in addition to those regulations."). The Hearing Officer's award of compensatory education does not impose responsibilities beyond what the law requires but rather remedies a denial of FAPE. It is well within this Court's authority to order the School District to provide training relating to the iPad, and therefore the Court affirms this remedy. *See P. v. Newington Bd. of Educ.*, 546 F.3d 111, 123 (2d Cir. 2008) (affirming hearing officer's order to retain an outside consultant).

b.  Failure to provide the 1:1 Aide

To remedy the denial of a 1:1 aide, the Hearing Officer awarded compensatory art and physical education designed to put C.H. in the position he would have been in had he been able to attend those classes during the fall 2013 semester. She tied the amount of reimbursement available to the cost of a 1:1 aide for the period of deprivation, minus a reasonable period of one month for the district to hire such an aide. Compensatory art and physical education is an appropriate remedy, but Third Circuit precedent requires that it be calculated based on the educational time deprived rather than the cost savings reaped by the School District. *See M.C.*, 81 F.3d at 397. The IEP indicates that the 1:1 aide should have worked with C.H. for 2120 minutes per week, and this Court defers to the Hearing Officer's conclusion that one month was a reasonable period of time for the District to hire and assign an aide. (Nov. 2013 IEP at 35; HO Decision at 19.) Subtracting two additional weeks for holiday vacations, this Court will award 2120 minutes times ten weeks, or 353 hours of compensatory education, to be delivered as specified in the Hearing Officer's Order.

c.  Failure to provide appropriate speech and language services

Finally, the Hearing Officer ordered compensatory speech and language therapy by straightforwardly applying *M.C.* (HO Decision at 20.) It is appropriate to order compensatory education for the full 2013–2014 school year because the staff at Roxborough High School was aware of C.H.'s speech and language needs no later than the first IEP meeting, before school started. However, this Court will credit the fifteen minutes per week of therapy that the School District did provide, despite the fact that Maclean failed to speak to C.H.'s prior therapist. (*See* HO Decision at 20.) The record shows that Maclean was providing small-group therapy to C.H. during that time based on her expert assessment of his needs. (Tr. at 389–95.) Therefore, the

Court will order two hours of compensatory speech/language therapy for every week that school was in session in 2013–2014, as well as twelve and a half hours total of consultation with Williams and outside providers who work with C.H.

        2.        *Other remedies*

In addition to these awards of compensatory education, the Hearing Officer issued orders requiring the School District to: (1) continue to provide C.H. with an iPad throughout high school; (2) continue to provide C.H. with a 1:1 aide throughout high school; (4) continue to provide at least three forty-five-minute sessions of speech/language therapy weekly and seventy-five minutes per month of consultative services; (5) provide thirty minutes per week of self-advocacy instruction; and (6) conduct a comprehensive evaluation. As discussed above, this Court has broad equitable authority to remedy denials of FAPE, including issuing prospective injunctions that last beyond the one year IEP period. *See Burlington*, 471 U.S. at 369–70. The Hearing Officer's orders were clearly designed to avoid time-consuming and costly re-litigation of these issues, which this Court considers appropriate in light of the IDEA's goal of providing students like C.H. with adequate public special education. *See id.* at 369. Therefore, it will affirm the orders relating to the iPad and the 1:1 aide, adding the caveat that each order is subject to revision by the IEP team.

However, it will revise the order relating to speech/language therapy. Marks, Williams's expert whose testimony the Hearing Officer credited, testified that C.H. needed three forty-five-minute group sessions per week initially, and that the amount could be reduced over time. By ordering that level of therapy to continue indefinitely and requiring that two of the three weekly sessions be individual, the Hearing Officer went beyond what the record demonstrates is necessary to ensure the provision of FAPE and unnecessarily removes control from the IEP

team. Therefore, the Court will order the provision of three forty-five-minute individual or group sessions each week for six months, with subsequent levels of speech/language therapy to be determined by the IEP team in light of the results of the comprehensive evaluation. The Court will affirm the Hearing Officer's order regarding future speech/language consultative services, subject to revision by the IEP team. The Court will also remove the order relating to self-advocacy, because the Hearing Officer did not find a denial of FAPE relating to self-advocacy or bullying. (HO Decision at 22–23.) The Court's authority is limited to remedying such denials. *See* 20 U.S.C. § 1415(i)(2)(C); *D.F.*, 694 F.3d at 498–99. Finally, the Court will affirm the order for an evaluation, which was squarely within the Hearing Officer's authority. *See* 20 U.S.C. § 1414(a)(1)(D)(ii)(I).

## IV.     CONCLUSION

For the foregoing reasons, the Court denies Plaintiff's Motion for Judgment on the Administrative Record, grants Defendant's Motion for Judgment on the Administrative Record in part, and orders appropriate relief. An Order consistent with this Memorandum will be docketed separately.